**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Stephen A. Hill,                                          )     No.  CV-19-04930-PHX-SPL
                                                         )
                                Plaintiff,               )
                                                         )     **ORDER**
vs.                                                      )
                                                         )
HD Supply Facilities Maintenance,                        )
Ltd.,                                                    )
                                                         )
                                Defendant.               )
                                                         )

Before the Court is Defendant HD Supply Facilities Maintenance, Ltd.'s Motion to Dismiss Plaintiff's Third Amended Complaint (the "Motion") (Doc. 52), which is fully briefed. For the reasons that follow, the motion will be granted in part with prejudice.[1]

## I.      Background

Plaintiff Stephen Hill ("Hill") initiated this action on July 29, 2019 in state court (Doc. 1-3) and Defendant removed it to federal court on August 9, 2019 (Doc. 1). The Court granted Defendant' motion to dismiss the second amended complaint (the "SAC") under Federal Rule of Civil Procedure 12(b)(6) without prejudice (Doc. 46) and Plaintiffs filed a Third Amended Complaint (the "TAC") which is the operative complaint. (Doc. 47) In the TAC, Plaintiff[2] alleges that he was employed by Defendant from July 2017 through

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See L.R. Civ. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Although there are two Plaintiffs in this action, this action arises out of a dispute between Mr. Stephen Hill and the Defendant. Mrs. Joanna Hill is married to Mr. Hill and

April 2019 as an area sales manager. (Doc. 47 at 2, ¶ 5) Hill alleges that he was entitled to payment of a yearly salary, plus a yearly bonus and monthly commissions based on performance. (Doc. 47 at 2, ¶¶ 9–10) Hill further alleges that, at the time of termination, Defendant owed him $52,359.17 in unpaid yearly bonus/commissions (Doc. 47 at 3, ¶¶ 13–14) but only paid him $18,974.63 after unilaterally modifying the terms of his employment contract, including the commissions structure. (Doc. 47 at 3, ¶16–19) Hill also alleges that he was owed commissions for the month of February 2019 in the amount of approximately $3,500. (Doc. 47 at 3, ¶ 22) Accordingly, Hill alleges that Defendant owe him $33,384.54 in unpaid bonus and $3,500 in unpaid commissions. The TAC contains five counts: (1) unpaid wages under Arizona Revised Statutes ("A.R.S.") § 23-350; (2) breach of implied oral contract; (3) breach of implied contract based on the conduct of the parties; (4) breach of the covenant of good faith and fair dealing; and (4) unjust enrichment. (Doc. 47 at 3–6) Defendant filed the Motion on May 15, 2020. (Doc. 52) Defendant also filed its reply to the TAC and asserted several counterclaims against Plaintiff. (Doc. 53)

## II.   Standard of Review

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Also, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing

---

appears to be named based on marital property laws. Accordingly, all subsequent references to Plaintiff in this order are to Mr. Hill.

*Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, pp. 94, 95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In deciding a motion to dismiss the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and must accept all well-pleaded factual allegations as true. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012); *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. Analysis

#### A. Breach of Implied Contract and Covenant of Good Faith and Fair Dealing

In the TAC, Plaintiff sets forth the language of an offer letter he received from HD Supply that offered him employment as an "Area Sales Manager (Supervisor, Field Sales)" as of July 10, 2017. (Doc. 47 at 2, ¶ 7) The offer letter sets forth Plaintiff's base salary at $85,000.00 and further provides that "in addition to [his] base salary, [Plaintiff] will participate in the HD Supply Facilities Maintenance Sales Incentive Plan, which provides a target incentive of 30% of [his] base salary. [His] actual payout will be calculated based

on the merits outlined in the plan document." (Doc. 47 at 2, ¶ 7)[3] Plaintiff alleges that he did not receive a copy of the Sales Incentive Plan but understood from Defendant and the offer letter that he would receive bonuses based on performance. (Doc. 47 at 2, ¶ 9) Plaintiff also alleges that he received monthly Incentive Statements that showed his eligible earnings and his bonuses and that he consistently received monthly bonuses, "reflecting his agreement with Defendant that he would receive bonuses." (Doc. 47 at 2, ¶ 11) Plaintiff then alleges that the January 2019 Incentive Statement showed pending payments from commissions/bonus were $52,359.17 and that Defendant refused to pay the full amount on the ground that such amount was a windfall and could be reduced under the company's "Incentive Plan for Field Account Specialist and Field Account Representative." (Doc. 47 at 3, ¶¶ 14–15) Plaintiff alleges that he was an Area Manager, not a field account specialist or representative, and that such plan did not apply to him because of its scope and also because he did not sign the plan. (Doc. 47 at 3, ¶¶ 16–18)

Plaintiff bears the burden to establish three elements for a breach of contract claim: (1) the existence of a valid contract; (2) a breach; and (3) damages. *Graham v. Ashbury*, 112 Ariz. 184, 185 (1975). Additionally, Plaintiff must make a showing that there was "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved are ascertainable." *KnightBrook Ins. Co. v. Payless Car Rental Sys., Inc.*, 43 F. Supp. 3d 965, 974 (D. Ariz. 2014) (internal quotations omitted), *overruled on other grounds*. Plaintiff alleges that he had an implied contract based on two alternative theories in two different counts: (1) that he had an oral contract that set forth his salary and commissions and bonuses (Doc. 47 at 4, ¶¶ 31–32); and in the alternative, (2) that an implied contract was created and existed with terms defined by Defendant's conduct in paying Plaintiff's monthly bonuses and commissions. (Doc. 47 at 4–5, ¶¶ 37–38)

---

[3] The Court notes that Defendant provided a copy of the offer letter as Exhibit A to their reply in support of the Motion. Although the Court can properly consider such document without converting the Motion into one for summary judgment because the TAC necessarily relies on it, the Court finds that it does not need to consider the content of the offer letter beyond the language already quoted in the TAC.

The Court finds that Plaintiff failed to plead enough facts to support his claim of implied contract based on oral representations in Count II. Indeed, even taking all well-pleaded allegations as true, Count II only states that Plaintiff "had an oral contract that set forth his salary and commissions and bonuses" but offers no other factual support for such conclusory statement. The TAC contains no allegation setting forth the oral representations which would have given rise to an oral implied contract with terms different from the offer letter. Plaintiff has attempted to plead this count three times now and the Court stated it would not grant any further leave to amend. Accordingly, Count II of the TAC must be dismissed with prejudice.

Turning to Count III of the TAC, the Court finds that Plaintiff's allegations are sufficient to survive the Motion to Dismiss. Indeed, the crux of Plaintiff's allegations on that count is that Defendant's conduct of paying bonuses and commissions which exactly matched the monthly Incentive Statements until January 2019 created an implied contract. It is true that Plaintiff has not provided any specific examples of amounts showed on his Incentive Statements which were actually paid by Defendant. It is also true that Plaintiff quotes the offer letter, which clearly states that his target incentive is 30% of his base salary but claims somehow that the incentive statement for January 2019 listed $52,359.17 as his commissions/bonus. That figure seems to be extremely high compared to a target of 30% of his $85,000.00 yearly salary. 30% of such salary is $25,500.00. This would be the target incentive for an entire year based on the plain language of the offer letter. Plaintiff acknowledges that Defendant paid him $18,794.63 as an incentive payment for the month of January, which represents approximately 22.3% of Plaintiffs' entire yearly salary. (Doc. 47 at 3, ¶ 19) Even though Plaintiff's claimed amount of damages appears disproportionate to the target incentive in the offer letter, drawing all reasonable inferences in favor of Plaintiff, the Court finds that it is possible Plaintiff may have been entitled to such amount. At the very least, without discovery into the Incentive Plan documents, including the existence of an alleged windfall provision allowing Defendant to reduce an incentive payment and Plaintiff's past Incentive Statements, the Court cannot conclude that Plaintiff

did not plead enough facts to support his claim of an implied contract based on Defendant's alleged conduct of always paying the exact amount set forth in Plaintiff's previous monthly Incentive Statements.

It is true that Plaintiffs has made no allegation, or provided any details, related to Defendant's method of calculating Plaintiff's bonuses and commissions. It is entirely possible that Defendant had a valid reason, based on the Incentive Plan documents, to reduce Plaintiff's Incentive payments for the month of January 2019. However, in ruling on a motion to dismiss, the Court cannot take such argument by Defendant as enough to support the dismissal of the well-pleaded Count III. Defendant's conduct in allegedly always paying the exact amount set forth on Plaintiff's monthly Incentive Statements supports Count III and the existence of an implied contract related to the payment of incentives which would have been offered and accepted through the conduct of the parties: Plaintiff worked for Defendant, Defendant set forth an incentive amount, and allegedly paid that exact amount, and there was consideration on both sides. The existence of the offer letter, by its terms, and without evidence of the Incentive Plan documents at this stage, does not foreclose Plaintiff's theory of an implied contract created through the parties' conduct. Indeed, it "is fundamental that, in order to be binding, an agreement must be definite and certain so that the liability of the parties may be exactly fixed." *Pyeatte v. Pyeatte*, 135 Ariz. 346, 350 (Ct. App. 1982). "Terms necessary for the required definiteness frequently include time of performance, place of performance, price or compensation, penalty provisions, and other material requirements of the agreement." *Id.* (citing 17 C.J.S. Contracts § 36(2) at 647–61 (1963); 17 Am. Jur. 2d Contracts § 75 at 413–15 (1964)). Furthermore, "[a] party will not be subjected to a contractual obligation where the character of that obligation is so indefinite and uncertain as to its terms and requirements that it is impossible to state with certainty the obligations involved." *Id.* at 351 (quoting *Aztec Film Productions v. Tucson Gas and Electric Co.*, 11 Ariz. App. 241, 243 (1969)).

Here, the offer letter states that actual incentive payouts will be calculated based on the terms of the Plan with a target of 30% of base salary. This is sufficiently definite at this

stage of the case to allow Count III to move forward. Indeed, Plaintiff alleges that Defendant always paid him the exact amount set forth on his monthly Incentive Statements with the exception of January 2019. It is entirely possible based on those allegations that Defendant did not reduce any of the prior payouts for Plaintiff's bonus and commissions because under the terms of the Plan, such reduction was not warranted. It is equally possible that the amount in January 2019 qualified for a reduction under the terms of the Plan. It is also possible that the target was just that, a goal and not a hard ceiling for potential incentive payouts. Plaintiff is not required to set forth all the terms of the Incentive Plan to allege an implied contract. He sufficiently alleged that there had never been a reduction of his incentive payout until January 2019 or that he was not subject to the Incentive Plan. Drawing all reasonable inferences in favor of Plaintiff, it is possible Defendant altered the terms of the Plan after Plaintiff had been consistently paid the exact amount stated on his Incentive Statements. Although it is also possible that the terms of the Plan would reveal that it applied to Plaintiff and the alleged reduction was warranted, at this stage, the Court is not deciding whether Plaintiff's claim can succeed but only if he plead sufficient facts under the *Iqbal* and *Twombly* standard. The Court finds that Plaintiff met this burden as to Count III and will deny the Motion as to that Count.

Furthermore, as the Court has explained previously (Doc. 46 at 5), without a valid contract, written or implied-in-fact, there can be no claim for a breach of the covenant of good faith and fair dealing. Indeed, such claim is derivative of the existence and breach of a contract and cannot stand on its own. *See, e.g.*, *Schwartz v. Chase Home Fin., LLC*, 2010 WL 5151326, at *1 (D. Ariz. Dec 13, 2010). For the Court to allow a claim for breach of the covenant of good faith and fair dealing to proceed through discovery, there must be some allegations in the complaint regarding the alleged bonus expectation from plaintiff. Having found that Plaintiff sufficiently pled the existence of an implied contract based on Defendant's conduct related to incentive payouts, the Court finds that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing can proceed as well. Indeed, the covenant is implied in every contract under Arizona law. *See White v. AKDHC, LLC*,

664 F. Supp. 2d 1054, 1065 (D. Ariz. 2009) Plaintiff alleges a breach of such covenant based on Defendant's failure to comply with the incentive payout terms of the alleged implied contract. Accordingly, the Court will deny the Motion as to Count IV.

## B.  Unpaid Wages

Plaintiff alleges that he "had a reasonable expectation that his commissions and bonuses would be paid." (Doc. 47 at 4, ¶ 26) The TAC contains no other allegations or statement supporting such claim. In Arizona, wages are defined are "nondiscretionary compensation due an employee in return for labor or services rendered by an employee for which the employee has a *reasonable expectation* to be paid whether determined by a time, task, piece, commission or other method of calculation." A.R.S. § 23-350(7) (emphasis added). The Court already found that the allegations in the TAC are enough to support a claim based on an implied contract. Plaintiff's expectation stems from the alleged implied contract and the fact that Defendant allegedly always paid him the incentive amount stated on the monthly statement. Whether Plaintiff's belief that he was entitled to more than $50,000.00 in incentive payout for the month of January 2019 is reasonable is a question of fact which the Court cannot resolve on the face of the TAC alone. Taking all well-pleaded allegations in the TAC as true, it is possible that Plaintiff had a reasonable belief that because his Incentive Statement showed a specific amount for January 2019, he would receive such amount as he allegedly always received the stated amount for each previous month. As already discussed, it is also possible that discovery will reveal that the Incentive Plan allowed Defendant to reduce the payout. Nevertheless, the Court finds that Plaintiff properly pleaded his claim for unpaid wages and the Court cannot conclude as a matter of law that his belief was unreasonable. Accordingly, the Court will deny the Motion as to Count I.

## C.  Unjust Enrichment/Quantum Meruit

In Arizona, a claim for unjust enrichment requires proving that there was "(1) an enrichment, (2) an impoverishment, (3) a connection between the [two], (4) the absence of a justification for the [two], and (5) the absence of a remedy provided at law." *Wang Elec.,*

*Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318 (Ct. App. 2012). Although Plaintiff does not have to prove the elements with his complaint, he must present factual allegations which, if taken as true, could support such a claim. Plaintiff clarified that his claim for unjust enrichment is pleaded in the alternative to his claims based on an implied contract. (Doc. 54 at 11) At this stage, although the Court found that Plaintiff alleged enough facts related to his implied contract theory, the Court also finds that Plaintiff alleged enough facts for his claim for unjust enrichment to move forward.

Indeed, Plaintiff claims that Defendant refused to pay him his due incentive payout, which satisfies the first three elements for a claim of unjust enrichment—Defendant was enriched by not having to pay more money to Plaintiff, Plaintiff was impoverished by not being paid what he was allegedly owed, and the two are clearly connected. Plaintiff alleges that Defendant had not justification for the refusal to pay him, arguing that the incentive plan did not apply to him, including the alleged windfall provision. Plaintiff does not have to prove at this stage that Defendant actually did not have a valid reason to refuse to pay, only to allege facts sufficient to support his claim. Finally, Plaintiff does lack a remedy at law. Indeed, if there was no implied contract, then Plaintiff has no legal remedy to receive the alleged amounts Defendant owe him without a claim for unjust enrichment. If there was an implied contract, then Plaintiff can use contract remedies to recover his alleged damages and his theory of unjust enrichment will need to be abandoned. At this stage, Plaintiff can plead in the alternative and the Court finds that the allegations related to Count V of the TAC are enough to survive the Motion. Accordingly, the Court will deny the Motion as to Count V.

Accordingly,

///

///

///

///

///

9

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 52) is **granted in part** as follows:

1.  Count II of the TAC is **dismissed with prejudice**;

2.  The Motion to Dismiss is **denied** with respect to Counts I, III, IV, and V of the TAC.

Dated this 29th day of July, 2020.

Honorable Steven P. Logan
United States District Judge